IN THE UNITED STATES DISTRICT COURT
DISTRIC OF MASSACHUSETTS

| STEPHANIE C. | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:13-cv-13250-DJC |
| | ) | |
| vs. | ) | |
| | ) | |
| BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS HMO BLUE, INC. | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY MEMORANDUM
IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT**

Plaintiff Stephanie C. ("Stephanie"), by and through her undersigned counsel and pursuant to F.R.Civ.P. 56, submits the following Reply Memorandum in Support of her Motion for Summary Judgment against Defendant Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc. ("BCBS").

**ARGUMENT**

**I.   The Discretionary Language Included in the Premium Account Agreement ("PAA") is Insufficient to Allow For an Abuse of Discretion Standard of Review**

BCBS works hard in its Opposition to Plaintiffs' Motion for Summary Judgment ("BCBS Opposition Memo"), docket #30, to claim that Gross v. Sun Life Assur. Co. of Canada, 734 F.3d 1 (1st Cir. 2013) does not require a *de novo* standard of review. But its argument falls short.

Both parties acknowledge that the only language in the Subscriber Certificate that comes could be construed as granting discretionary authority is the statement that "Blue Cross and Blue Shield decides which covered services are medically necessary and appropriate for you." BCBS Opening Memorandum, docket #26, p. 5. BCBS goes on to argue that this Court's earlier cases,

Bonnano v. Blue Cross and Blue Shield of Massachusetts, Inc., 2011 U.S. Dist. LEXIS 118825 (D. Mass. 2011) and Smith v. Blue Cross and Blue Shield of Massachusetts, Inc., 597 F.Supp.2d 214 (D. Mass. 2009), specifically held that the same language on which BCBS relies to confer discretionary authority in this case was sufficient to confer discretionary authority in those cases. But BCBS is not close to being accurate on that point.

In fact, as outlined below, the policy language at issue in Bonnano and Smith is substantially more clear in providing a basis to find discretionary authority exists than the Subscriber Certificate language in this case. But in any event, the problem for BCBS is that Gross is intervening precedential authority. In Gross the language the First Circuit deemed insufficient was the requirement that the claimant submit proof of a covered loss "satisfactory to Sun Life [the insurer]." Gross, 734 F.3d at 14. After surveying decisions from many other Circuits about whether this language was adequate, the First Circuit ruled that this language did not provide the "requisite if minimum clarity" required to provide fair notice to plan participants and beneficiaries that the insurer was retaining discretionary authority to decide the worthiness of claims. Gross, 734 F.3d at 15. A simple statement that the insurer would decide whether proof was satisfactory "does not state with sufficient clarity 'that the plan administrator is to make a judgment largely insulated from judicial review by reason of being discretionary.'" Gross, 734 F.3d at 16 (citing Herzberger v. Standard Insurance Co., 205 F.3d 327, 332 (7th Cir. 2000).

The Subscriber Certificate language BCBS relies on in this case is does not even reach the level of the "proof satisfactory to [the insurer]" language at issue in Gross. At least the "proof satisfactory to [the insurer]" language is susceptible to the idea that "satisfactory" implies some subjective or discretionary standard (albeit insufficient to confer discretion under Gross) that the insurer retains the authority to utilize when making its decision to deny benefits. The language

2

BCBS relies on in this case does nothing more than express a truism: BCBS will decide what benefits are medically necessary and pay for those benefits. But, as the First Circuit referenced approvingly in Gross, this "adds nothing to the obvious point that '[n]o plan provides benefits when the administrator thinks that benefits should not be paid.'" Gross, 734 F.3d at 14 (citing Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 252 (2nd Cir. 1999). Without more, the language BCBS relies on fails under Gross.

The problem for BCBS relying on Bonnano is that the discretionary authority language in that case was much more explicit than the language BCBS relies on in this case. Bonanno at *21-22 ("The Plan grants Blue Cross . . . 'full discretionary power to interpret the meaning of plan provisions and determine questions arising under the plan, including, but not limited to, eligibility for benefits.'"). Likewise, in Smith the plan documents granted BCBS with "full discretionary authority to make decisions regarding eligibility for benefits" and "to conduct medical necessity review." Smith, 597 F.Supp.2d 217 and 219. It may be true that, as BCBS points out in its Opposition Memo, p. 4, the language in Smith "could not be clearer" in conveying discretionary authority to the plan administrator. But such explicit language appears nowhere in the Subscriber Certificate in this case. To the extent discretionary authority language she same as or comparable to the language in this Subscriber Certificate exists in other cases on which BCBS relies, those cases all predate Gross and are superceded by its holding.

As noted in the Plaintiff's Opening Memorandum, docket #28, while the PAA contains language that is more explicit and clear in conveying discretionary authority to BCBS, it was never distributed or available to the plan participants and beneficiaries in this case. BCBS does not claim otherwise. As a result, Plan participants had no idea about the degree to which a court must defer to decisions by the Plan to deny benefits.

Contrary to BCBS' argument, the failure to provide clear notice to Plan participants of BCBS's reservation of discretionary authority is necessary under ERISA. Gross repeatedly discusses the need for "clear" language in providing for a grant of discretionary authority. 734 F.3d at 11-16. The question becomes, for whose benefit is the clarity required in Gross necessary? If it is only necessary for a court to find a clear grant of discretionary authority somewhere in a document under which the plan is operated, BCBS could perhaps get away with tucking its discretionary authority language in the PAA, safely hidden from the participant's and beneficiary's knowledge. But the First Circuit's reliance in Gross on the Seventh Circuit's reasoning in Herzberger makes clear that it is not just clarity and notice given to this Court that is important; clarity is necessary to give the insureds of BCBS notice of what they are getting and what they are not getting under the BCBS policy.

> An ERISA plan can likewise specify that the administrator has discretion . . . But the discretion is not to be assumed. Especially not when we consider the importance of the fringe benefits covered by ERISA plans to modern employees.
> . . .
> The broader that discretion, the less solid an entitlement the employee has and the more important it may be to him, therefore, to supplement his ERISA plan with other forms of insurance. In these circumstances, the employer should have to make clear whether a plan confers solid rights or merely the "right" to appeal to the discretion of the plan's administrator.

Herzberger, 205 F.3d at 331. The Seventh Circuit went on to state that:

> An employer should not be allowed to get credit with its employees for having an ERISA plan that confers solid rights on them and later, when an employee seeks to enforce the right, pull a discretionary judicial review rabbit out of his hat.

Id, at 332-333.

BCBS states that there is no holding in the First Circuit to indicate that information about discretion must be provided to participants and beneficiaries at all (BCBS Opposition Memo, p. 3). However, this is also inaccurate. The intended recipients of any information in plan

4

documents about requirements and eligibility for benefits and coverage under a group plan including, but not limited to, grants of discretion are, in fact, the participants and beneficiaries. BCBS proposes no alternative explanation for a requirement of discretionary language other than to inform participants and beneficiaries of their rights and obligations under the terms of the Plan. In Gross, the First Circuit "'wholly endorse[d]' the Herzberger model language," 734 F.3d at 15, and cited with approval language from Sandy v. Reliance Standard Life Ins. Co., 222 F.3d 1202, 1207 (9th Cir. 2000) that "*neither the parties nor the courts* should have to divine whether discretion is conferred." Id., at 16 (emphasis added).

Because the Subscriber Certificate does not contain language sufficient to trigger an abuse of discretion standard of review and the PAA is not a document provided to Plan participants and beneficiaries, the Court's review of this matter is *de novo*. However, even if the Court determines that the grant of discretion in the PAA is sufficient to require an abuse of discretion review, BCBS's decision to deny the Plaintiffs' claim cannot be sustained.

## II. BCBS Failed to Provide the Information Required Under ERISA's Claims Procedure Regulations to Notify the Plaintiff of the Denial of Her Claim

BCBS has insisted throughout the litigation process that the bases for denial and the information it provided to Stephanie in its denials was sufficient to satisfy the requirements of ERISA's claims procedure regulations. BCBS argues that because it sent, among other things, a copy of the InterQual® criteria to Stephanie during the pre-litigation appeal process, she had sufficient information to understand the basis of the denial. BCBS rejects the idea that its statement that Miles's ". . . clinical condition does not meet the medical necessity criteria required for an acute residential psychiatric stay in the area of symptoms/behavior," (AR000399) without more, is insufficient under ERISA's claims procedure regulations. While this is a

5

"reason" for the denial, BCBS's May 25, 2012, letter fails to engage with, analyze, or respond to, the information provided relating to Miles's residential treatment.

Stephanie appealed this denial in a letter to BCBS dated May 20, 2013. The appeal package begins at AR000402 and ends at AR000892. The appeal letter is 16 pages and contains much detail about Miles medical and mental health history. It includes many excerpts from his medical records and statements from teachers, school administrators, and past and current healthcare professionals about why the residential treatment at issue in this case was necessary for Miles. It includes 26 exhibits, including the medical records from Gateway. The appeal letter identifies specifically how and why Miles's condition met the InterQual® criteria for "symptoms/behavior." AR000413-414.

Stephanie expressed frustration about the lack of information BCBS had provided in denying the claim:

> Dr. Kearns, M.D. did not provide me with any specific references to the medical record that he [sic] believed supported his determination that Miles fails to meet the InterQual® Criteria. It is difficult to properly appeal a denial when no meaningful information is provided and, in fact, BCBS of Massachusetts in required under Federal Law (ERISA) to provide us with specific reasons for the denial. While BCBS MA and Dr. Kearns have provided conclusions, you have not provided me with specific rationale regarding how you arrived at these conclusions.
>
> The denial should include references to the current clinical record which supports your determination. Exactly how does the clinical record fail to meet each one of the Interqual® criteria? What additional symptoms or behaviors are missing that should be present in order to determine that someone does, in fact, meet the criteria? Your denial falls short of ERISA requirements.

AR000416.

BCBS responded to Stephanie's appeal in a denial letter dated June 19, 2013. Remarkably, the language addressing the substance of the denial was precisely the same as the language in BCBS's first denial of May 25, 2012, that Miles's ". . . clinical condition does not

6

meet the medical necessity criteria required for an acute residential psychiatric stay in the area of symptoms/behavior" AR000898. No additional rationale, analysis, or justification was provided by BCBS. It made no attempt to address any of the specifics of Stephanie's appeal letter. It made no attempt to respond to her questions. It made no effort to explain why it's denial complied with the requirements of ERISA.

In <u>Bard v. Boston Shipping Assoc.</u>, 471 F.3d 229 (1st Cir. 2006), the First Circuit held that:

> [t]he record contains no evidence that the Board's first denial of benefits, or its specific reasons for that denial, were communicated to Bar in writing or by electronic means. This was in contravention of federal regulations.

<u>Id.</u> at 232, citing 29 C.F.R. § 2560.503-1(g)(1). The First Circuit went on to say:

> . . . the Board sent Bard a letter communicating the denial of benefits. The sole reason for decision stated in the letter was that "Pursuant to Article VIII (Disability Benefits)" of the Plan, the Board "in its sole judgment" had determined that Bard "was not totally and permanently disabled prior to his termination." No explanation was provided in the letter as to the reasons for the Board's determination.

<u>Id.</u> at 235. The plan administrator's communications with the claimant in <u>Bard</u> are remarkably similar to the communications between BCBS and Stephanie in this case in that the plan's denial contained no meaningful information to "provide clear notice to potential claimants of their substantive and procedural rights." <u>Id.</u> at 237. <u>Bard</u> goes on to discuss the various regulations in detail and concludes:

> All of these notice provision serve an obvious purpose: they seek to notify the claimant of what he or she will need to do to effectively make out a benefits claim and to take an administrative appeal from a denial.

7

Id. at 239[1]. With regard to ERISA's claims procedure regulations that require insurers such as BCBS to create a framework to carry out a "meaningful dialogue" in the pre-litigation review process, one Circuit states, "there is nothing extraordinary about this; it's how civilized people communicate with each other regarding important matters." Booton v. Lockheed Medical Benefits Plan, 110 F.3d 1461, 1463 (9th Cir. 1997).

BCBS provided no information to Stephanie about denial of her claims other than to say Miles did not meet the symptoms/behaviors components of the InterQual® criteria. Providing Stephanie with a copy of the criteria did nothing to enlighten her about why or how BCBS did not believe Miles' residential treatment did not meet that part of the InterQual® criteria. ERISA requires more than the cursory treatment BCBS gave Stephanie.

### III. BCBS May Not Introduce *Post Hoc* Rationale For the First Time in Litigation

As argued in the Plaintiffs' Opposition Memo, pp. 9-11, BCBS attempts to remedy the shortcomings of its denials during the pre-litigation process by raising new arguments and presenting new information for the first time in litigation. BCBS persists in this attempt in its Opposition Memo, presenting four bases for denial. BCBS argues that Miles' care was:

> 1) Provided in a residential "educational" program that was not covered by Miles' Plan, 2) not approved in advance by Blue Cross as required by Miles's Plan, 3) not furnished in the "least intensive" type of medical care setting that was appropriate, and 4) not medically necessary as defined by that Plan.

---

[1] *See e.g.* Morales-Alejandro v. Medical Card Sys., 486 F.3d 693, 698-699 ("Part of the communication requirement is that the SPD provide certain information 'written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.'" 29 U.S.C. § 1022(a); McCarthy v. Commerce Group, Inc., 831 F.Supp.2d 459, 489 (D. Mass. 2011) (failure to provide reasons for denial and address arguments in appeal was not merely a technical violation of ERISA. "Not only did the Compensation Committee neglect to provide even the bare-bones of ERISA's core procedural protections, but the Compensation Committee also failed to grapple with the most difficult questions presented in McCarthy's Good Reason claim").

BCBS Opposition Memo, pp. 1-2.  However, none of these bases for denial were included in BCBS' denials to Stephanie.  The only reason BCBS provided in its letters of denial was that Miles' care did not meet the symptoms/behaviors requirements of the InterQual® criteria.  Plaintiffs will not re-plow ground already covered in their Opposition Memo where they provided ample evidence that no Circuit across the country permits plans or insurers to raise new arguments or present new information for the first time in litigation to justify a denial of benefits.  It is sufficient to simply say that BCBS may not, for the first time in a Motion for Summary Judgment, present arguments and identify information to support its denial that it could have, would have, and should have presented during the pre-litigation appeal process. Glista v. UNUM Life Ins. Co. of America, 378 F.3d 113, 129 (1st Cir. 2004).

### IV.  Miles' Conditions Met InterQual® Criteria for Residential Treatment

The medical records and other information provided to BCBS in the pre-litigation appeal process make clear that Miles satisfied the InterQual® criteria for residential treatment.

BCBS makes much of the Plaintiffs' assumption that Dr. Kearns completed the "Review Summary" which was provided to Stephanie.  However, the identity of the individual who completed the form is irrelevant.  What is relevant is to take note of how much of the information, rationale, analysis, and explanation provided by BCBS in its briefing was never provided by BCBS in the pre-litigation appeal process. For example, BCBS never identified before filing its Opposition Memo who completed the "Review Summary." Indeed, it provided no meaningful explanation or rationale for its denial in the pre-litigation appeal process other than to restate its conclusion that Miles did not satisfy the symptom/behaviors component of the InterQual® criteria.

BCBS faults the Plaintiffs for interpreting the form's check marks to mean that Miles met the checked-off criteria. But how else would BCBS have Plaintiffs interpret that form? BCBS provided no explanation about the form, its reviewer(s), what the form meant, or what the check marks indicated. BCBS's own belated effort to explain the form and its handling of the form is something that it could, and should, have provided to Stephanie in the pre-litigation appeal process. She asked for BCBS to do that specifically in her appeal letter. AR000416. Glista precludes BCBS's sorry attempt to do its job correctly now.

In any event, BCBS's *post hoc* rationale for why it denied Miles's claim is unpersuasive. Stephanie went through the symptoms/behaviors elements of the InterQual® criteria in detail in her appeal letter. AR000413-000414. She made specific reference to Miles's medical records to show that his symptoms/behaviors were a chronic/persistent danger to himself and others for numerous reasons and in a way that satisfied more than one of the eight bullet points identified in the criteria found at AR000439. The medical records established that his symptoms were continuing right up to the date he was admitted to Gateway, thus satisfying the within one week criterion. The medical records made clear that the behaviors requiring treatment for Miles had been present for at least six months. And those same medical records demonstrated that, without treatment, the behaviors were expected to persist longer than one year.

Stephanie went through the InterQual® criteria step by step in their Opening and Opposition memos and demonstrated with citations to the Record that Miles' conditions met the requirements of the criteria. Plaintiffs' Opening Memo, pp. 11-14; Opposition Memo, 11-13. BCBS concludes that "[t]he InterQual Review Summary has little evidentiary value in this case, and does not show what Plaintiff imagines it to show." BCBS Opposition Memo, p. 10. BCBS is not in a good position to complain about the Plaintiffs' attempt to interpret the Review

Summary in light of the fact that it was the only "explanation" for BCBS' rationale provided other than the boilerplate "does not meet criteria" basis for denial.

If BCBS wanted more information or had questions about the information provided by Stephanie, it was obligated to follow up and ask for that information. <u>Booton</u>, 110 F.3d at 1463. What BCBS cannot do is "arbitrarily refuse to credit a claimant's reliable evidence" found in Miles's medical records. <u>The Black & Decker Disability Plan v. Nord</u>, 538 U.S. 822, 834 (2003). The truth of the matter is that BCBS had no financial interest in assisting Stephanie to perfect her claim. BCBS did not want to pay for expensive residential treatment and availed itself of a conveniently vague basis for denial that essentially precluded any meaningful appeal.

## V.     Information Necessary To Calculate What BCBS Owes

BCBS notes in closing that the Court is not in possession of information necessary to determine the exact amount that BCBS owes for Miles's treatment. This is true. The Plaintiff requests an opportunity to provide that information in the event she obtains a ruling in her favor.

DATED this 29th day of September, 2014

                                                 s/ Brian S. King
                                                Brian S. King
                                                Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants identified by the Court and there are no non-registered participants.

/s/ Jonathan M. Feigenbaum