UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHANIE C., individually and as guardian of MILES G.,<br><br>Plaintiff,<br><br>v.<br><br>BLUE CROSS BLUE SHIELD<br>OF MASSACHUSETTS HMO BLUE, INC.,<br><br>Defendant. | Civil Action No. 13-13250-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                             June 30, 2016

### I.    Introduction

Plaintiff Stephanie C. ("Stephanie"), individually and as guardian of Miles G. ("Miles"), has brought this action against Defendant Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc. ("BCBS") under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), challenging BCBS's partial denial of health insurance benefits for mental health treatment.  D. 1.  This Court previously denied Stephanie's motion for summary judgment and allowed BCBS's motion.  Stephanie C. v. Blue Cross Blue Shield of Massachusetts HMO Blue, Inc., No. 13-cv-13250-DJC, 2015 WL 1443012, at *1 (D. Mass. Mar. 29, 2015) ("Stephanie C. I").  Upon remand from the First Circuit, the Court considers only whether, applying the *de novo* standard of review, Stephanie meets her burden to demonstrate coverage for Miles's treatment at Gateway Academy ("Gateway") under the group health benefit

plan (the "Plan").  See Stephanie C. v. Blue Cross Blue Shield of Massachusetts HMO Blue, Inc., 813 F.3d 420, 429 (1st Cir. 2016) ("Stephanie C. II").

The Court solicited and reviewed the parties' supplementary briefs addressing the application of the *de novo* standard of review in determining coverage of the claims.  D. 57, 58. Having had the benefit of the parties' previous briefing and oral argument, as well as supplemental briefing and a second oral argument, for the reasons stated below, the Court concludes that, even applying the *de novo* standard of review, Stephanie does not meet her burden to demonstrate coverage of the claims under the Plan and her motion for summary judgment, D. 27, is DENIED and BCBS's motion for summary judgment, D. 24, is ALLOWED.

## II.   Prior Rulings from the District Court and First Circuit

In Stephanie C. I, this Court concluded that, based on the language of the Premium Account Agreement ("PAA") and the Subscriber Certificate, BCBS is granted discretionary authority to determine eligibility for benefits under the Plan.  See Stephanie C. I, 2015 WL 1443012, at *7.  The Court rejected Stephanie's arguments that increased scrutiny should be applied where the Court concluded there was no conflict of interest because BCBS is only "granted full discretionary authority to make decisions regarding the amount, form and timing of benefits and other claims-based decisions, not to make payments of claims out of plan assets." See id. at *8 (citation and internal quotation marks omitted).  The Court further concluded that there were no procedural irregularities to necessitate heightened scrutiny where BCBS provided Stephanie with a sufficient explanation for the denial of benefits as well as the entire claim file in advance of her appeal.  See id. at *8-9.  The Court, in applying the more deferential arbitrary and capricious standard of review, concluded that BCBS did not abuse its discretion in denying the claims.  See id. at *9-12.

On appeal, the First Circuit affirmed in part and vacated in part this Court's decision. See Stephanie C. II., 813 F.3d at 423. The First Circuit affirmed the portion of this Court's decision relating to the purported conflict of interest and procedural irregularities. Id. at 425-27. In vacating the Court's judgment regarding BCBS's denial of benefits, the First Circuit held that the language of the Subscriber Certificate was not sufficiently clear to grant discretionary authority to BCBS to determine eligibility benefits. Id. at 428. The First Circuit remanded the case to this Court only to reconsider BCBS's denial of coverage by applying the *de novo* standard of review. Id. at 429.

### III. *De novo* Standard of Review

In applying the *de novo* standard of review in an ERISA denial-of-benefits case, the Court "independently weigh[s] the facts and opinions in the administrative record to determine whether the claimant has met [her] burden" of demonstrating, by a preponderance of the evidence, coverage of claims under the applicable plan or policy. See Richards v. Hewlett-Packard Corp., 592 F.3d 232, 239 (1st Cir. 2010); Adele E. v. Anthem Blue Cross, No. 15-cv-01-DBH, 2016 WL 1732722, at *6 (D. Me. Apr. 28, 2016) (citation omitted); see also Wickman v. Nw. Nat. Life Ins. Co., No. 86-cv-1895-WF, 1989 WL 129240, at *2 (D. Mass. Oct. 23, 1989), aff'd sub nom. Wickman v. Nw. Nat. Ins. Co., 908 F.2d 1077 (1st Cir. 1990). Where the Court bases its review on the administrative record and ultimately decides coverage, "summary judgment is simply a vehicle for deciding the issue." Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir. 2005). Essentially, the Court stands in the shoes of the policy administrator to determine whether its decision was correct. See Richards, 592 F.3d at 239 (citation omitted). In doing so, the Court gives "no deference to the administrator's opinions or

conclusions." See Gross v. Sun Life Assur. Co. of Canada, 734 F.3d 1, 17 (1st Cir. 2013) (citation omitted).

**IV.    Discussion**

As discussed in Stephanie C. I, "the terms of the Subscriber Certificate expressly state that benefits will not be provided for 'services that are performed in educational, vocational, or recreational settings' even if they 'include therapeutic elements and/or clinical staff services as well as vocational, educational, problem solving, and/or recreational activities.'" Stephanie C. I, 2015 WL 1443012, at *10 (citation omitted).[1]  Stephanie does not dispute that Gateway "offers, as a component of its comprehensive services, an accredited educational program for its patients," D. 33 ¶ 14; see id. ¶ 16.  Although Stephanie disputes that Miles was admitted as a student,[2] id. ¶ 14, "Family Progress Notes" indicate that Stephanie discussed "Miles's initial week at Gateway including school," AR 243.  Additionally, Gateway refers to its patients as "students," see, e.g., AR 246 and "Individual Progress Notes" indicate that Miles received schooling, see AR 250.  Applying the *de novo* standard of review and independently weighing the evidence in the record, Stephanie has not met her burden of demonstrating coverage under the Plan for Miles's stay at Gateway where mental health services were provided to him in an educational setting.  This basis alone forecloses coverage of the claims under the Plan.  AR 58.

---

[1] Neither party contests the Court's prior recitation of the undisputed facts which is incorporated herein.  See Stephanie C. I, 2015 WL 1443012, at *2-3.

[2] The Court notes that Stephanie, in her response to BCBS's statement of material facts, "affirmatively alleges" that "a full range of therapy, education and recreation are offered by all residential treatment facilities for adolescents in the United States as mandated by the appropriate local governmental entity providing licensure for the facility."  D. 33 ¶ 16.  Regardless of whether that is true, and where Stephanie does not challenge the educational limitation included in the Plan itself, the Court's role here is to determine coverage under the terms of the Plan.

Stephanie argues, however, that BCBS cannot rely on the educational limitation as a basis to deny the claims because such a limitation was not mentioned to Stephanie during the appeals process.  See D. 32 at 9; D. 58 at 7-9.[3]  Reviewing the record *de novo*, Stephanie does not meet her burden to demonstrate that BCBS failed to articulate the educational limitation to her.  In her complaint, Stephanie acknowledged that BCBS informed Miles's father that the Plan did not cover treatment that was provided "in a school setting."  D. 1 ¶ 66.  Additionally, Stephanie does not contest BCBS's assertion in its statement of material facts that "[o]n June 20, 2011, Blue Cross informed Miles' father that the payment was a one-time exception" and that "the Plan did not cover treatment provided in a school setting," but challenges only the record citation BCBS provides (AR 214).  See D. 33 ¶ 21.  The Court, however, does not rely on the educational limitation alone in concluding that Stephanie has not met her burden in demonstrating coverage for the claims.

Applying the *de novo* standard of review, Stephanie also has not met her burden in demonstrating that Miles's treatment at Gateway was "medically necessary"—as defined in the Preferred Blue PPO Preferred Provider Deductible Subscriber Certificate ("Subscriber Certificate")—and thus covered under the Plan.  As discussed in Stephanie C. I, two psychiatrist reviewers, on behalf of BCBS, utilized the InterQual Criteria to determine whether Miles's stay at Gateway was medically necessary to treat his condition.  See Stephanie C. I, 2015 WL 1443012, at *10.  Stephanie does not appear to contest the use of the InterQual Criteria in this regard.  D. 58 at 3-6.  The InterQual Criteria requires that Miles, at the time of admission to Gateway, meets the criteria for "Clinical Indications" and "Social Risks."  AR 189-90.  The

---

[3] While Stephanie relies upon Glista v. Unum Life Ins. Co. of Am., 378 F.3d 113 (1st Cir. 2004) in support, this Court previously distinguished the case in rejecting Stephanie's same argument and does so again here, see Stephanie C. I, 2015 WL 1443012, at *10 n.4.

criteria for "Social Risks" includes criteria for "Risks" and "Level of Care," respectively, both of which must be satisfied. AR 190. Applying the *de novo* standard of review and independently weighing the evidence in the record, Stephanie fails to satisfy her burden to demonstrate that Miles's condition met either aspect of the "Social Risks" criteria.

The "Risks" criteria requires a reviewer to find, in part, a record of unsuccessful treatment within the year prior to admission. AR 190. Unsuccessful treatment is defined as (1) "lack of improvement of the patient's symptoms and behaviors in prior treatment," or; (2) a patient's "inability to complete an adequate trial of treatment provided by a licensed program or clinician." AR 192 ¶ 18. Reviewing the record *de novo*, Stephanie has not met her burden to demonstrate that Miles's three-month treatment at the Vantage Point of Aspiro ("Aspiro")—a short term wilderness therapy program for teenagers, D. 33 ¶ 34—immediately prior to his admission to Gateway was "unsuccessful," considering the improvements he made. See AR 689-95; Stephanie C. I, 2015 WL 1443012, at *11. As to Miles's "Emotional Regulation," Aspiro's discharge report indicates that Miles "showed increasing ability to express himself and engage in emotional problem solving over time" and an "increasing ability to deal with frustration and disappointment." AR 691. Regarding Miles's "Behavior Regulation," the discharge report indicates that Miles had "developed a better ability [to] manag[e] his behaviors" and that "[h]e reduced his inappropriate talk and impulsive behaviors." Id. Stephanie does not otherwise point to any evidence suggesting that Miles did not make at least some improvement or was unable to complete his treatment while at Aspiro. See D. 58 at 4. Applying the *de novo* standard of review, the Court concludes that Stephanie has not met her burden in demonstrating satisfaction of this aspect of the InterQual Criteria.

The "Level of Care" criteria requires a reviewer to find for "Psychiatric Subacute Care/Psychiatric Residential Treatment Center"[4] that the patient has been discharged or transferred from a psychiatric hospital within twenty-four hours prior to admission to a psychiatric residential treatment center and that the patient presents one of four listed sub-conditions: "medication refractory/resistant and severe psychiatric symptoms persist," "profound functional impairment," "unable to maintain behavioral control for more than 48 hours and improvement is not expected within the next two weeks" or "hostile/intimidating interactions." AR 190.[5] While Stephanie argues that Miles presented at least one of the four listed sub-conditions, D. 58 at 5, she does not meet her burden in demonstrating that Miles had been discharged or transferred from a psychiatric hospital within twenty-four hours prior to his admission to Gateway. Miles was enrolled at Aspiro immediately before attending Gateway, but

---

[4] Stephanie concedes that the other two categories under the "Level of Care" criteria, AR 190, are inapplicable, see D. 58 at 4-5. The Court thus addresses only the "Psychiatric Subacute Care/Psychiatric Residential Treatment Center" category.

[5] The Court notes that the "Level of Care" criteria has two different sets of criteria for evaluating the "Psychiatric Subacute Care/Psychiatric Residential Treatment Center" category: criteria for "Psychiatric Subacute Care" and criteria for a "Psychiatric Residential Treatment Center." AR 190. The InterQual Criteria provides guidelines to distinguish the two types of care, compare AR 192 ¶ 21 with AR 193 ¶ 28, but notes that those guidelines are "subject to organizational policy," AR 192 ¶ 21; AR 193 ¶ 28; see AR 189. While Stephanie urges the Court to evaluate Miles's stay at Gateway under the criteria for a "Psychiatric Residential Treatment Center," see D. 58 at 5, "Blue Cross Blue Shield of MA uses the Psychiatric Subacute Care level of care criteria exclusively for Adolescent ART [acute residential treatment]," AR 902. Additionally, the InterQual Criteria guidelines for "Psychiatric Subacute Care" include "intensive therapies," "behavior modification" and "diagnostic evaluation," AR 193 ¶ 28, which are not included in the guidelines for a "Psychiatric Residential Treatment Center," AR 192 ¶ 21, as a less intensive treatment environment. The record indicates that while Miles was at Gateway he received, among other services, a "Master Treatment Plan" to assist him in improving his mood and anxiety management, D. 29 ¶¶ 36, 39, regular individual and group therapy sessions, id. ¶¶ 37, 46; see, e.g., AR 242, 246, 250, 258, and a diagnostic evaluation, D. 29 ¶ 35. Absent evidence in the record that Gateway served as a "Psychiatric Residential Treatment Center" for Miles, the Court again evaluates "Level of Care" under the "Psychiatric Subacute Care" criteria. See Stephanie C. I, 2015 WL 1443012, at *11.

Stephanie does not establish that Aspiro was a psychiatric hospital.  To the contrary, Stephanie does not contest that Aspiro was a short term wilderness program, D. 33 ¶¶ 33-34, and, applying the *de novo* standard of review, the Court concludes that she does not meet her burden in demonstrating that this aspect of the InterQual Criteria is satisfied.  As such, Stephanie does meet her burden to demonstrate that Miles's treatment at Gateway was "medically necessary" under the Plan.

**V.      Conclusion**

For the aforementioned reasons and applying the *de novo* standard of review, Stephanie has not met her burden to demonstrate that Miles's stay at Gateway is covered under the Plan. Accordingly, Stephanie's motion for summary judgment, D. 27, is DENIED and BCBS's motion for summary judgment, D. 24, is ALLOWED.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge